Ivonne V. FERGUSON, Appellee

v.

Joel L. McKIERNAN, Appellant.

Superior Court of Pennsylvania.

Argued April 15, 2004.

Filed July 22, 2004.

John W. Purcell, Jr., Harrisburg, for appellant.

Elizabeth A. Hoffman, Harrisburg, for appellee.

Before: BENDER, McCAFFERY and TAMILIA, JJ.

TAMILIA, J.

¶ 1 This is an appeal from the Order docketed December 31, 2002, concluding that appellant, Joel L. McKiernan, is the legal father of twin boys born as a result of in vitro fertilization (IVF) and, therefore, is obligated to pay child support.[1] Appellant argues the trial court erred by (1) ignoring the presumption of paternity of appellee's then-husband; (2) not giving effect to the contract between the parties relieving appellant of any support obligation; and (3) not concluding appellee is estopped on the basis of fraud from claiming appellant is the father of the children. The facts underlying this appeal follow.

¶ 2 While appellee Ivonne V. Ferguson was married, she and the appellant, a co-worker, conducted an on-again off-again affair beginning in 1991 and continuing for approximately two years. During this time, for reasons unknown, appellee told appellant that she was using the birth control device Norplant, when in reality she had had a tubal ligation.

¶ 3 In 1993, when the parties' relationship waned, appellee suggested that she and appellant conceive a child together. While appellant initially refused, later that year appellee convinced him she was financially able to be a single mother, and promised that in exchange for appellant's anonymous participation as a sperm donor, she would release him from any obligation, financial or moral, to any child conceived. The record also reveals that earlier that year, again unbeknownst to appellant, appellee's doctor had informed her, upon her request, that a reversal of the tubal ligation was impossible. With that knowledge, appellee, along with an African American male representing himself to be appellee's husband (appellant is Caucasian), met with a specialist to discuss the possibility of IVF. Appellee thereafter was accepted as an IVF candidate; appellant provided the sperm as agreed, and appellee became pregnant with twins who were born, prematurely, on August 25, 1994.

¶ 4 While the parties remained friends during appellee's pregnancy, it was still appellant's intent to remain anonymous and uninvolved with the pregnancy. Appellee, however, told appellant's brother that appellant indeed was the father of her unborn child(ren). Although appellant responded to appellee's frantic cry for companionship during her premature labor, after the twins were born appellant saw them only at the hospital, and not again until two years later when he spent an afternoon with appellee and the boys. Appellee continued her deception by naming her husband, from whom she by then was divorced, as the father on the birth certificate. From 1996 until May 1999 when she filed for child support, appellant had no contact whatsoever with appellee or the children.

[A]ppellate review of support matters is governed by an abuse of discretion standard. An abuse of discretion is not

---

1. A series of support Orders was entered August 11, 2003, each one based on a separate calculation of each party's income over the time period from the filing of the first support complaint through the date of the final Order. Dependant on the income determinations, support was calculated to be between $1,152 and $1,520 monthly plus arrearages. Record No. 1 through 8, Orders of Court.

merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, basis or ill-will, as shown by the evidence of record.

*Warfield v. Warfield,* 815 A.2d 1073, 1075 (Pa.Super.2003) (quotation omitted).

¶ 5 The trial court considered all testimony and arguments presented relative to appellant's position that appellee's blatant subterfuge should preclude her petition for relief, but in its 1925 statement exercised its discretion to enforce the Support Orders on a different legal premise. While the trial court found appellee's intentional deception despicable, it nevertheless considered the welfare of the innocent children involved, found appellant to be their legal father, and ordered him to pay child support. We agree.

¶ 6 The oral agreement between the parties that appellant would donate his sperm in exchange for being released from any obligation for any child conceived, on its face, constitutes a valid contract. Based on legal, equitable and moral principles, however, it is not enforceable. *See Kesler v. Weniger,* 744 A.2d 794, 796 (Pa.Super.2000) (holding that a parent cannot bargain away a child's right to support); *see also Sams v. Sams,* 808 A.2d 206 (Pa.Super.2002) (holding, *inter alia,* that while child support Orders and private agreements for support may coexist, a child's right to support cannot be bargained away by either parent, and any release or compromise is invalid to the extent it prejudices the child's welfare). While we agree with the trial court that the oral agreement between the parties is not enforceable, we will nevertheless briefly address the issues raised by appellant.

¶ 7 Appellant first argues the court erred by finding him to be the children's legal father and ignoring the presumption of paternity routinely attributed to appellee's husband to whom she was still married at the time of conception. At a November 9, 2000 hearing, the court considered any possible role appellee's husband may have played in this sad situation and concluded he had none; appellee's husband left the marital home two years before the IVF was performed and filed for divorce on the very day the procedure was performed, obtaining the final decree two months later, before the children were born. At no time, according to the evidence presented, did appellee hold her husband out as father of the children. Appellee's naming of husband as father on the children's birth certificates, as stated above, was merely one more deceptive strand woven into her web of lies.

[T]he policy underlying the presumption of paternity was the preservation of marriage, and the ever-changing nature of relationships in our society dictate[s] that the presumption would apply only where that underlying policy would be advanced by its application. In other words, where there is an intact family or marriage to preserve, the presumption applies; if there is no marriage to protect then the presumption is not applicable.

*Warfield, supra,* at 1075 (Pa.Super.2003), citing *Brinkley v. King,* 549 Pa. 241, 250–251, 701 A.2d 176, 181 (1997); *see also J.C. v. J.S.,* 826 A.2d 1 (Pa.Super.2003), *appeal denied,* 576 Pa. 724, 841 A.2d 531 (2003). Agreeing mother rebutted the presumption of paternity, we find the court did not err by concluding that appellee's ex-husband was not the legal father of the twins.

¶ 8 Appellant's next two arguments are interwoven: the court erred by not giving legal force to the parties' agreement, and

appellee is estopped, on the basis of fraud, from claiming appellant is the father of the children. As discussed above, the court did acknowledge the parties' agreement, on its face, constituted a legal oral contract. Due to the fact the contract between appellee and appellant bargained away a legal right not held by either of them, however, but belonging to the subject children, the contract was not enforceable. *See Kesler, supra.* We agree with the trial court, "[a]lthough we find the [appellee's] actions despicable and give the [appellant] a sympathetic hue, it is the interest of the children we hold most dear." Trial Court Opinion, Evans, J., 12/31/02, at 9. There was no error.

¶ 9 Order affirmed.