OPINION BY
DEL SOLE, P.J.:
¶ 1 This is an appeal from a trial court order which denied Appellant C.R.’s preliminary objections challenging S.A.’s standing to pursue a custody action.[1] We *1249 affirm the dismissal of the preliminary objections and find S.A. has standing to pursue her custody action by virtue of her in loco parentis status to the child.
¶ 2 S.A. instituted this action with the filing of a complaint seeking shared legal and primary physical custody of D.A.R. D.A.R. was born in 1998, as the natural child of C.R. and a surrogate mother, with whom the parties had a contractual agreement. At the time of the agreement Ap-pellee and Appellant had been married for approximately 18 years and for numerous years attempted to have a child together. After all attempts to have a biological child related to both parties failed, they abandoned the effort and agreed that would try to have a child biologically related to C.R. alone, by insemination of his sperm into an agreed surrogate mother. In connection with this arrangement, an agreement was made which provided that S.A. was to adopt the resulting child and serve as his mother. It further provided that the surrogate would sign all consents for adoption and such other documents necessary to allow S.A. to legally adopt the child, and should C.R. die or become incapacitated before custody was released to him, the child would be placed in the sole custody of S.A.
¶ 3 Both parties attended prenatal visits during the surrogate’s pregnancy. They were present at the birth of the child and S.A. was given the child to hold immediately after birth. The child was given S.A.’s surname as his middle name and the couple issued birth announcements listing his parents as S.A. and C.R. The child went home with the parties who shared the duties of parenting.
¶4 In May of 1999, C.R. learned that S.A. had engaged in a long-term extra-martial relationship with a man who resides in England. S.A. had been seeing him when she traveled abroad in connection with her employment as a linguist. In October of 1999, the parties began residing separately within their home, and in March of 2000, S.A. moved into her own apartment. Thereafter in the summer of 2001, C.R. began restricting S.A.’s role as a parent, a departure from their previous shared parenting arrangement.
¶5 Thereafter, S.A. filed a complaint seeking shared legal and primary physical custody of the child. C.R. filed preliminary objections contending S.A. lacked standing because she is neither the biological mother, nor the adoptive parent of the child. He further contended that S.A. did not stand in loco parentis to the child. S.A. filed a response claiming that she did indeed have standing in an action over custody of the child based on her relation to the child as his mother by estoppel and in loco parentis. She also filed an amended custody complaint in which, in her prayer for relief, she sought to be declared the child’s mother by estoppel, to have the child’s birth certificate changed and to be awarded certain custody rights.
¶ 6 The court held hearings on the matter and ultimately issued an order overruling the preliminary objections. The court also ruled that “S.A. is ‘mother by estop-pel’ of D.A.R.” Order, 4/10/03. Father appealed. The trial court in its opinion for purposes of appeal detailed the reasoning for its conclusion that S.A. established that she is the child’s mother by estoppel and as such has standing to pursue her action. The court further reasoned that “[ejven if the Superior Court were to conclude that Plaintiff is not mother by estoppel, we *1250 believe Plaintiff has standing by virtue of being in loco parentis to the child.” Trial Court Opinion, 10/24/03, at 12.
¶ 7 We affirm the trial court’s dismissal of Appellant’s preliminary objections solely on the legal basis that S.A. has standing by virtue of her in loco parentis status. However, at this time we decline to adopt the legal concept of “motherhood by estoppel” advanced by the trial court since it is unnecessary to do so.
¶ 8 “The phrase ‘in loco parentis ’ refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of in loco parentis embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.” T.B. v. L.R.M., 567 Pa. 222, 786 A.2d 913, 916-917 (2001). Our courts have recognized that the child’s best interest requires that one who is in loco parentis be granted standing so as to have the opportunity to fully litigate the issue of whether that relationship should be maintained, even over a natural parent’s objections. J.A.L. v. E.P.H., 453 Pa.Super. 78, 682 A.2d 1314, 1320 (1996). Standing will be found where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child’s eye a stature like that of a parent. Id.
¶ 9 It was appropriate for the trial court to deny challenges to S.A.’s standing in seeking custody of a child she cared for since birth. The court accepted testimony that in his first few months of life, the child was with S.A. most of the day, even at work. Once a nanny was hired, S.A. remained the parent responsible for the child’s care in the mornings and shared these duties with C.R. in the evenings. The court found that S.A. was the child’s “record-keeper, noting his various developmental victories.” Trial Court Opinion at 4. Even after separation, S.A. cared for the child on a constant basis, arriving at the marital home by 8:00 a.m. and remaining until the nanny arrived at 10:00 a.m. She also frequently stayed at the home until the child was put to sleep and for nearly two months in the fall of 2000, she remained in the home while C.R. was away traveling. The court noted that the child refers to S.A. as “mommy” and that she has remained involved in the child’s health care, schooling and religious upbringing.
¶ 10 “An important factor in determining whether a third party has standing is whether the third party lived with the child and the natural parent in a family setting, irrespective of its traditional or nontraditional composition, and developed a relationship with the child as a result of the participation and acquiescence of the natural parent.” Bupp v. Bupp, 718 A.2d 1278, 1281 (Pa.Super.1998). S.A. lived with and parented this child since birth, developing her role as his mother with the participation and acceptance of C.R. The role enjoyed by her as a parent to this child was the position the parties contemplated when first entering the surrogate agreement. It would be improper for the court to deny S.A. status to seek custody rights to this child. Accordingly, we find the trial court properly denied Appellant’s preliminary objections.
¶ 11 Order denying preliminary objections affirmed.

. This Court has granted Appellant’s petition for permission to appeal the trial court’s interlocutory order which noted, pursuant to 42 *1249 Pa.C.S.A. § 702(b), that its order "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter.” Order, May 7, 2003.