Patricia JONES, Appellee,

v.

Ellen Boring JONES, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 31, 2005.
Filed Sept. 30, 2005.

Kenneth R. Williams, Doylestown, for
appellant.

Maureen T. Gatto, BenSalem and Alphonso B. David, New York City, for appellee.

BEFORE: KLEIN, PANELLA and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 The trial judge, the distinguished Susan Devlin Scott, determined by clear and convincing evidence that awarding primary custody to the non-biological parent of a lesbian couple, Patricia Jones ("Jones"), as against the biological mother, Ellen Boring Jones ("Boring"), was in the best interests of the twin children that had been raised by them until the couple parted. We find (a) that the trial judge used the correct standard of proof, clear and convincing evidence, and (b) that the evidence was sufficient to show by clear and convincing evidence that the children were better off with primary custody in the non-biological parent. Judge Scott's cogent and thorough opinion fully addresses these issues and we rely on that in great part in this Opinion.

¶ 2 Boring raises five issues in her Statement of Questions Involved. None has merit.

¶ 3 1. Boring claims the trial court applied an incorrect burden of proof. Judge Scott held Jones to proof by clear and convincing evidence, the correct standard.

¶ 4 2. Boring claims the trial court abused its discretion in granting primary custody to the non-biological parent, Jones. We believe that the record supports a finding by clear and convincing evidence that the bests interests of the children are served by granting primary physical custody to Jones, for a number of reasons discussed in the trial court's opinion, not the least of which are the lack of consideration of the children manifested in

Boring's efforts to move to keep Jones from contact with the children, the effort to cut off any contact of the children with Jones in a variety of ways, and the respective psychological profiles of Boring and Jones.

¶ 5 3. Boring claims that the trial court failed to consider Boring's "historical role" as primary caregiver. Judge Scott *did* consider that role, as well as the role of Jones as caregiver early in the twins' life when Boring went back to work and the children were in a day care facility on the premises of Jones' employment.

¶ 6 4. Boring claims that the trial court erred by failing to consider the preferences of the children. In fact, it was at the parties' agreement that Judge Scott did not interview the children, but instead relied on the interview by the custody evaluator and the testimony of the parties. This evaluation was discussed on pages 21 and 22 of Judge Scott's opinion, so it certainly was considered by her. Moreover, the children did not express a clear preference for one or the other, but wanted to see both Jones and Boring frequently.

¶ 7 5. Boring claims the trial court erred in relying on past testimony. That issue is waived because Boring did not object when Jones' counsel moved to incorporate the testimony from prior custody proceedings to avoid revisiting all earlier issues, and the trial court granted the incorporation. (R. 252a–253a). It is clear that when making a decision as to the current best interests of the children, the trial judge can consider the history of the parties. *See Snarski v. Krincek*, 372 Pa.Super. 58, 538 A.2d 1348, 1359 (1988). Here, rather than rehashing all the past problems, the prior testimony was incorporated in the proceedings without objection, which is an intelligent and efficient way to

proceed, particularly when the same trial judge presided over the prior hearings.

## Discussion

¶ 8 Boring and Jones lived together in a romantic relationship starting in 1988. The two decided to have children by artificial insemination. Boring was impregnated by an anonymous sperm donor, and gave birth to twin boys on December 3, 1996. The parties lived together as a family until January 2001, when Boring left Jones' residence where they all lived, taking the children with her.

¶ 9 Boring does not seriously contest that Jones is *in loco parentis*, considering the background outlined above and particularly since she filed a support petition against Jones in 2001. *See J.A.L. v. E.P.H.*, 453 Pa.Super. 78, 682 A.2d 1314, 1320 (1996). Initially, while Judge Scott granted joint legal custody, primary legal custody was in the biological mother, Boring, while Jones had relatively typical partial custody visitation rights. Boring argues that since there was no finding that she, as the biological parent, was unfit, the court applied an incorrect standard or burden of proof. This, however, is not a complete statement of the law.

¶ 10 Initially, the trial judge recognized that there was a presumption that primary custody should go to the biological parent rather than one *in loco parentis*. *See Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980). It was only after time passed that, based on the record, Judge Scott concluded that Jones had established by clear and convincing evidence that it was *in the best interests of the children* to transfer primary custody to her. Once it is established that someone who is not the biological parent is *in loco parentis*, that person *does not need to establish that the biological parent is unfit*, but instead must establish by clear and convincing evidence

that it is in the best interests of the children to maintain that relationship or be with that person. *See Ellerbe, supra. See also Kellogg v. Kellogg*, 435 Pa.Super. 581, 646 A.2d 1246, 1249 (1994) (third parties who establish standing by virtue of *in loco parentis* are not elevated to status of natural parent in determining merits of custody dispute).

¶ 11 The Pennsylvania Supreme Court considered this issue in a case involving a custody contest between a stepfather and the natural father following the death of the mother. *See Charles v. Stehlik*, 560 Pa. 334, 744 A.2d 1255 (2000). The Court affirmed primary custody in the stepfather, stating that unlike other states, in Pennsylvania it was not necessary for a party *in loco parentis* to establish that the biological parent was unfit before he or she could obtain primary custody. Rather, the Court reaffirmed the standard as follows:

It is axiomatic that in custody disputes, "the fundamental issue is the best interest of the child." *Ellerbe v. Hooks*, [490 Pa. 363,] 416 A.2d 512, 513 (Pa. 1980). In a custody contest between two biological parents, "the burden of proof is shared equally by the contestants...." *Id.* Yet, where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. *In such instances, "the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party.* Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological] parents' side." *Id.* at 514 (quoting *In re Hernandez*, [249 Pa.Super. 274,] 376 A.2d 648, 654 (Pa.Super.1977))....
*While this Commonwealth places great*

*importance on biological ties, it does not do so to the extent that the biological parent's right to custody will trump the best interests of the child.*

744 A.2d at 1257–1259 (emphasis added).[1]

■ ¶ 12 This best interests analysis, therefore, is weighted in favor of the biological parent. The burden of proof is not evenly balanced, as the parents have a *prima facie* right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party. This weighted best interests analysis is based upon a consideration of all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being. *See K.B. v. C.B.F.,* 833 A.2d 767, 776 (Pa.Super.2003).

¶ 13 "What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." *McDonel v. Sohn,* 762 A.2d 1101, 1107 (Pa.Super.2000), *citing Ellerbe,* 416 A.2d at 513–514. These principles "do not preclude an award of custody to the nonparent. Rather, they simply instruct the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy." *McDonel,* at 1107, *citing Ellerbe,* 416 A.2d at 514.

■ ¶ 14 Here, Judge Scott did just that. While the scale was tipped in favor of Boring, Jones produced clear and convincing reasons to even the scale and then tip it on her side. Jones did not establish that Boring was unfit, and was not required to do so, but Jones did clearly and convincingly establish that the children would be better off with her as the primary custodian and that the children's relationship with *both* parties would be better fostered if custody were awarded to Jones. Judge Scott noted during the initial round of hearings in this case, wherein primary custody was awarded to Boring, that Boring was inclined "to attempt to exclude Jones" and the court cautioned that Boring "can't totally control the children's lives without any input from the other person that was a parent." (Opinion, 3/9/05 at p. 10, citing N.T., 91/28/01, p. 142). *See McDonel v. Sohn, supra* (applying weighted best interests analysis, court awarded primary custody to maternal aunt and uncle, who stood *in loco parentis,* in dispute between maternal aunt and uncle and natural father; court found convincing evidence that this was in child's best interest based on psychologist's conclusions, observations and interviews with child, third parties' history of frequent, regular, and continuing involvement with child since her birth, and fact that child stayed with aunt and uncle for significant periods during the first five years of her life); *Jordan v. Jackson,* 876 A.2d 443 (Pa.Super.2005) (applying weighted best interest analysis, court awarded mother custody in dispute where third party challenged the grant of custody to a parent; third party did not meet burden of proof and persuasion that

1. The Supreme Court also noted that despite a plurality decision in 1995, this remained the standard. The Court stated: "A few years ago, a plurality of this court indicated that it desired to 'abandon the presumption that a parent has a prima facie right to custody against third parties....' " *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126, 128 (1995). Instead, the plurality favored the adoption of a standard which would "eliminat[e] the presumption *per se,* and mandat[e] that custody be determined by a preponderance of the evidence, weighing parenthood as a strong factor for consideration...." *Id.* (citations omitted). This position did not, however, garner a vote of the majority of the court. *Charles,* 744 A.2d at 1259, n. 3. *See also In re Slaughter,* 738 A.2d 1013 (Pa.Super.1999).

convincing reasons exist such that award of custody to the third party is in the child's best interest).

¶ 15 We find that Judge Scott was well within her discretion in finding that Jones had established by clear and convincing evidence that she should have primary custody. After the separation, Boring attempted to remove "Jones" from the children's names after failing to prevail in an effort to change the boys' names to her maiden name, which, as Judge Scott put it, "...was an early attempt at what would become a multi-year effort to exclude Jones from the children's life." Trial Court Opinion, p. 9.

¶ 16 Judge Scott's thoughtful review of the record confirms this. Jones has a strong parental bond with the children and, unlike Boring, never interfered with Boring's role as parent. To the contrary, and as indicated above, the record is replete with evidence that Boring tried in every way possible to sabotage Jones' relationship with the children. Boring tried to relocate out of the area to decrease contact with Jones, although it disrupted the children's schooling. Boring put her own interests ahead of the children's. The custody evaluator determined that Boring suffered from psychological dysfunction that showed Boring's inability to maintain stability in jobs, residence, schooling or continuity of relationships for her and the children. There also was evidence that Boring had a drinking problem. Further, Boring has a history of ignoring court orders. To the contrary, the evaluator determined that Jones is psychologically healthy and stable.

¶ 17 Judge Scott's considered opinion reflects a painstaking review of the physical, spiritual, moral and educational issues in the children's lives and a comparison of each party's response to those issues. We have neither the authority nor the inclination to go behind this evaluation.

¶ 18 Jones asserts that the law is changing. As the concept of family evolves the law will evolve along with it. Jones claims that in the situation presented here, where two people together decide to have a child, although only one is the biological parent, and they both live together and parent the children together following their birth, the standard should be a simple best interests analysis, and that the law should abandon both the presumption in favor of the biological parent and the "clear and convincing" standard of proof. Since the trial court determined, and we agree, that there *was* "clear and convincing evidence" in this case, we do not reach that issue today. *Cf. S.A. v. C.G.R.*, 856 A.2d 1248 (Pa.Super.2004) (former wife had standing by virtue of *in loco parentis* status to pursue custody of child born to former husband and surrogate mother; court, however, refused to adopt concept of "mother by estoppel" that was advanced by the trial court).

¶ 19 The record supports the finding that Jones has established by clear and convincing evidence that evened up and then tipped the scales in favor of finding that the children's best interests are served by awarding primary custody to her. Judge Scott, therefore, conducted a full and properly weighted best interest analysis. We find no abuse of discretion or error of law. *See Jordan*, 876 A.2d at 449 (appellate interference is allowed only where it is found that the child custody order is manifestly unreasonable as shown by the evidence of record). We agree with Judge Scott's reasoning and therefore affirm the trial court's order granting primary custody to Jones.

¶ 20 Order affirmed.