Jodilynn JACOB, Appellee

v.

Jennifer L. SHULTZ–JACOB, Appellant.

Jennifer L. Shultz–Jacob, Appellant

v.

Jodilynn Jacob and Carl Frampton, Appellee.

Superior Court of Pennsylvania.

Submitted Feb. 12, 2007.

Filed April 30, 2007.

---

Heather Z. Reynosa and Audrey E. Woloshin, York, for appellant.

Mindy S. Goodman, Harrisburg, for Jacob, appellee.

John R. Fenstermacher, Mechanicsburg, for Frampton, appellee.

BEFORE: HUDOCK, LALLY-GREEN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 These unconsolidated appeals lie from two orders, denying respectively Appellant's complaint, lodged in York County, for sole legal and primary physical custody of the parties'[1] four children, and her motion to join the biological father of two of the children in Dauphin County proceedings to resolve Appellee's complaint for child support. We affirm in part and vacate and remand in part, and hold that, in

---

1. The "parties" refers to Appellant and Appellee Jacob.

the circumstances of this case, the doctrine of equitable estoppel governs the financial obligation of a sperm donor to support children in whose lives he is involved.

¶ 2 Beginning in 1996, the parties lived together in York County for approximately nine years, during which period they underwent a commitment ceremony in Pittsburgh, and entered into a civil union in Vermont. Of the children who are the subjects of these actions, two, A.J. and L.J., are nephews of Appellee's whom she has adopted. The remaining two, Co.J. and Ca.J., are Appellee's biological children by Appellee Carl Frampton, a longtime friend of Appellant's. At her instigation he agreed to act as sperm donor, and has been involved in the children's lives since their birth.

¶ 3 In February of 2006, after several months during which the parties continued to reside together despite separation as a couple, Appellee relocated with the children from York County to Dauphin County. Shortly after Appellee's departure, Appellant, naming both Appellee and Appellee Carl Frampton as defendants, sought full legal and physical custody of all four children in the York County Court. At the conclusion of a conciliation conference on March 20, legal and primary physical custody of all the children were temporarily awarded to Appellee with partial physical custody in Appellant. Although Appellant was awarded no legal custody rights, Appellee Frampton received shared legal and physical custody of Ca.J. and Co.J. Appellant's subsequent petition for special relief was denied on March 23. However, at some point soon thereafter, Appellee voluntarily relinquished L.J. to Appellant's care, and began providing a stipend for his support.

2. This award is not contested.

¶ 4 On April 3, Appellee filed a complaint in Dauphin County seeking child support from Appellant for Ca.J. and Co. J., and was awarded approximately $983 per month. Appellant appealed seeking *de novo* review on the basis that Appellee Frampton was essentially a third parent to Co.J. and Ca.J., and as such was obligated to contribute to their financial support. Although Appellant had failed to file a formal joinder request prior to the support hearing, she was permitted to do so afterwards. Following the court's receipt of the formal request and Appellee's response, joinder was denied on July 31.

¶ 5 The custody litigation was resolved on the second day of a two day trial held on August 1 and 2, when the trial court, ruling from the bench, awarded shared legal custody of all four children to the parties. Appellant received primary physical custody of L.J. only, with partial physical custody as to him in Appellee, who was awarded primary physical custody of the other three children, with partial custody in Appellant. Appellee Frampton was awarded partial physical custody, one weekend a month, of Co.J. and Ca.J.[2]

¶ 6 Appellant has filed appeals from both the custody and support orders. Although presenting separate issues, the anomalous circumstances of these actions present basic and interrelated questions concerning the parental rights and responsibilities both of Appellant and of Appellee Frampton given the parties' recognition of her *in loco parentis* status, as well as his standing as a biological parent.

¶ 7 We first note that

[t]he scope of review applied by an appellate court to a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from

its findings of fact, nor must the reviewing court accept a finding that is not supported by competent evidence. However, this broad scope of review does not vest an appellate court with the duty or privilege of making its own independent determination. An appellate court may not interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion.

*T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913, 916 (2001) (citation omitted). Absent a manifestly unreasonable custody order, we may not reject the trial court's conclusions. *Jordan v. Jackson*, 876 A.2d 443, 449 (Pa.Super.2005).

¶ 8 In the first of Appellant's issues contesting the award to her of partial physical and shared legal custody with respect to all of the children except L.J., she argues that the trial court erred in failing to acknowledge the legal standing conferred by her *in loco parentis* status until all the litigants stipulated to that condition on August 1, 2006. However, since the stipulation attesting to her status was recognized by the court prior to its entry of the instant order, the issue is moot, and we need not address it further.

¶ 9 The remainder of Appellant's issues assign as error the trial court's: 1) having permitted Appellee to relocate without satisfying the test in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990); 2) failure to award her primary physical custody of all four children on the basis of their best interests; 3) refusal to base its decision on the conclusions advanced by the expert; and 4) refusal to allow the expert's report to be admitted.[3] All of these issues save # 4 are based on the notion that the trial court abused its discretion in fashioning its custody arrangements, and, as a corollary, posits the tacit assumption that *in loco parentis* status confers on Appellant complete equality with Appellee for purposes of litigation.

¶ 10 Our courts have long held that "[the] rights and liabilities arising out of that relation [*in loco parentis*] are, as the words imply, exactly the same as between parent and child." *Commonwealth v. Cameron*, 197 Pa.Super. 403, 179 A.2d 270, 272 (1962); *see also Young v. Hipple*, 273 Pa. 439, 117 A. 185, 188 (1922). That status confers on third parties, defined for purposes of custody disputes as persons other than biological parents, *T.B., supra* at 916 n. 6, standing such as would permit them "the opportunity to litigate fully the issue of whether that relationship [with the child] should be maintained even over a natural parent's objections." *Id.* at 917 (citation omitted). However, standing established by virtue of *in loco parentis* status does not elevate a third party to parity with a natural parent in determining the merits of custody dispute. *Jones v. Jones*, 884 A.2d 915, 917 (Pa.Super.2005), *appeal denied*, 590 Pa. 668, 912 A.2d 838 (Pa.2006) (citing *Kellogg v. Kellogg*, 435 Pa.Super. 581, 646 A.2d 1246, 1249 (1994)). Rather, even with standing referable to *in loco parentis* status,

> where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances the parents have a prima facie right to custody which will be forfeited only if convincing reasons appear that the child's best interest[s] will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological] parents' side.

**3.** Some of Appellant's issues have been combined for ease of disposition.

*Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255, 1258 (2000) (citations and quotation marks omitted), cert. denied, 530 U.S. 1243, 120 S.Ct. 2689, 147 L.Ed.2d 961 (2000). Under any circumstances, the axiom that the paramount interest to be served in custody disputes is that of the child(ren) remains undisturbed. *Id.* at 1258–59. "What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." *Jordan, supra* at 449 (citations omitted).

¶ 11 As to all of Appellant's best interests claims, including her assertion that the *Gruber* test[4] should have been applied, the trial court here determined that the evidence was not sufficient to override the presumption in favor of the biological parent, nevertheless noting in its decision from the bench that "all parties have had a very positive influence on the lives of the children." (N.T., 8/2/06, at 242). The court emphasized the fitness of both parties as parents, and characterizes their differences as mere matters of parenting style, pointing out that Appellant is more of a disciplinarian than is Appellee, and suggesting that although A.J., who suffers from AD/HD,[5] impulsivity, and possibly from depression, might benefit from a more structured environment, "the household offered by [Appellee] is certainly more than adequate for giving [A.J.] appropriate supervision, and the framework within which he can develop, even given the AD/HD and his current issues." (*Id.* at 253).

¶ 12 Indeed, although Appellant argues that service of the children's best interests lies with her, the only attempt at demonstrating Appellee's putatively lesser parental aptitude is reference to an order of the Court of Common Pleas of Dauphin County directing that L.J. "have no contact or visitation at the home of [Appellee] until further order of this court." (Plaintiff's Trial Exhibit 3, Order of 7/25/06, at 2). The order was presented as an exhibit at the custody trial, and stems from an unresolved delinquency adjudication based on charges that L.J. committed indecent assault against Ca.J. The order under review here includes language directing that "[a]t no point in time are the parties to exercise custody of [L.J.] and [Ca.J.] at the same time," and thus addresses the restriction on L.J.'s contact with Ca.J. (Order of 8/17/06, at 3).

¶ 13 With respect to the conclusions and report of the custody expert, Kasey Shienvold, Psy.D., Appellant assigns error to the court's rejection of the expert's recommendation that absent the possibility of an "ideal" arrangement, that is, shared custody, primary custody be awarded to her. Appellant also contends the court erred in refusing to admit the expert's report "as an exhibit and/or consider[ ][it] as evidence." (Appellant's Brief at 25). In part, Appellant bases her contentions on the fact that selection of the expert was mutually agreed upon, and his credentials unchallenged.

¶ 14 Appellant relies on this Court's decision in *Jones, supra,* for the proposition that in declining to adopt the expert's posi-

---

**4.** A *Gruber* analysis requires the court to: 1) inquire whether a proposed move represents potential advantages to the children and is not the product of a momentary whim on the parent's part; 2) assess the motives both for the move and of the action to prevent it; and

3) discover whether realistic custody/visitation arrangements exist. *Id.* at 439. The "ultimate objective" remains the child's best interests. *Id.* at 437.

**5.** Attention deficit/hyperactivity disorder.

tion, the trial court "ignored the overwhelming evidence" in favor of vesting primary custody in her. (Appellant's Brief at 25). However, we found that in *Jones,* unlike the situation herein, the biological mother actively and persistently attempted to exclude the other partner from the children's lives, relocating specifically for that reason, and "tried in every way possible to sabotage [the appellant's] relationship with the children." *Id.* at 919. The custody evaluator in that case also revealed that the biological mother "suffered from psychological dysfunction," and had, in addition to a drinking problem, "a history of ignoring court orders." *Id.* None of those conditions, or any approximation of them, obtains here, hence the expert's principal recommendation that shared custody would be the most desirable arrangement. Moreover, as this Court noted in *Nomland v. Nomland,* 813 A.2d 850, 854 (Pa.Super.2002), the notion that uncontradicted expert evaluations may not be totally discounted is merely an iteration of the principle that the trial court's decision must be supported by the record. This Court in *King v. King,* 889 A.2d 630 (Pa.Super.2005), has explained that

> [i]t is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given due deference to the trial court's weight and credibility determinations," the trial court erred or abused its discretion in awarding custody to the prevailing party.

*Id.* at 632. Here, so far from discounting the expert's evidence, the court noted that "the observations of the professional have mirrored this Court's observation of the parties." (N.T., 8/2/06, at 248).

¶ 15 As to the court's refusal to admit the report of the expert into evidence, we find no error. Dr. Sheinvold testified at length, Appellant was offered an opportunity to recall him after the report was not admitted, and, most pertinently, the trial court specifically states that it considered the testimony offered by the expert. Given these occurrences, Appellant provides no explanation as to what benefit admission of the report would have afforded her. Accordingly, under our standard of review and given the traditional preference for biological parents, we do not disagree with the trial court's assessment of the children's best interests, nor do we disturb its custody arrangements.

¶ 16 In her appeal from the support order, Appellant has ostensibly raised three claims concerning the court's denial of her joinder motion. Two of these are, in fact, aspects of the same contention, that Appellee Carl Frampton, having, as the biological father of Co.J. and Ca.J. a *prima facie* right to custody, for the same reason also has the obligation to contribute to their support. That being so, the trial court erred in denying the motion to join him as an indispensable party. As a coda to her primary contention, Appellant argues that the biological mother's failure/unwillingness to pursue support claims against the biological father is irrelevant, and since all of the three persons involved in these matters have been awarded formal rights of custody, all three are obligated to provide support.

Our standard and scope of review in child support cases is narrow. We will not disturb a child support order absent an abuse of discretion. An abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court overrides or misapplies existing law, or if the judgment exercised by the trial court is manifestly unreasonable.

*L.S.K. v. H.A.N.*, 813 A.2d 872, 876 (Pa.Super.2002) (citations and quotation marks omitted).

¶ 17 "An indispensable party is one whose rights or interests are so pervasively connected with the claims of the litigants that no relief can be granted without infringing on those rights or interests." *Hubert v. Greenwald*, 743 A.2d 977, 979 (Pa.Super.1999), *appeal denied*, 563 Pa. 688, 760 A.2d 854 (Pa.2000). The basic inquiry in determining indispensability concerns whether, in the absence of the person sought to be joined, justice can be done. *Id.* at 980. Analysis of this claim requires reference to both the nature of the claim and the requested remedy. *Id.*

¶ 18 In finding that because Appellee Frampton is not obligated to provide child support he is thus not indispensable, the trial court relies on two case authorities. The first, *L.S.K.*, *supra*, explores the financial responsibility of a lesbian partner in a long term relationship where a sperm donor, in that case anonymous, fathered a child to the other partner. Support was not sought from the biological father, who had relinquished all parental rights.

¶ 19 The Court found that the biological mother was owed support by her partner, who had exercised custodial rights on the basis of her *in loco parentis* status. The duty, however, was not to be derived from the Domestic Relations Code, 23 Pa. C.S.A. § 4321(2), governing liability for support of minor children. Rather, the obligation stemmed from principles of equitable estoppel, which "applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken." *L.S.K.*, *supra* at 877 (citations and quotation marks omitted). Reduced to its essence, the doctrine is one of "fundamental fairness, designed to preclude a party from depriving another of a reasonable expectation when the party inducing the expectation albeit gratuitously knew or should have known that the other would rely on that conduct to his detriment." *Id.* Thus the trial court in this case held that Appellant, having "asserted custodial rights in relation to [the children], is [ ] obligated under an equitable theory to provide for their support." (Trial Ct. Op., 11/21/06, at 6).

¶ 20 In two basic respects, this case differs from *L.S.K.*: first, Appellant does not deny her own responsibility to support the children; rather, her focus is on the omission of any similar obligation assigned to Appellee Frampton, who, if he has not "asserted custodial rights" by petitioning for them, has sought them informally, and has in no way declined the award of custody. However, *L.S.K.* provides a matrix in which the critical question in this case arises: if fundamental fairness prevents Appellant, identified by law as a third party, from avoiding a support obligation arising from her status as a *de facto* parent, and she does not, in any event, attempt such an avoidance, does not the same principle operate similarly to estop Appellee Frampton, automatically recognized as the possessor of parental rights based on his biological parenthood, from disclaiming financial responsibility? We find that it does. His obligation is, in fact, statutorily imposed as "[p]arents are liable for the support of their children who are unemancipated and 18 years of age or younger." 23 Pa.C.S.A. § 4321(2). As the Court in *L.S.K.*, *supra* at 877, has opined, stepparents who have held a child out as their own are liable for support; biological parents who have exercised the rights appurtenant to that status can be no less bound. Thus the trial court's conclusion that Appellant's obligation is established by *L.S.K.* is not incorrect, only incomplete.

¶ 21 Further, Appellee Frampton has himself anticipated his obligation by providing support to Co.J. and Ca.J. since their births, having contributed "in excess of $13,000" in the last four years, (N.T., 8/2/06, at 217),[6] $3,000 of it during the six months preceding the custody trial (*id.* at 222); and having borrowed money to provide the parties with a vehicle suited to transporting the children. (*Id.*). While these contributions have been voluntary, they evidence a settled intention to demonstrate parental involvement far beyond the merely biological. Further, in addition to having been awarded partial custody,[7] Appellee was present at the birth of Co.J. (*id.* at 20); has expressed an interest in relocating closer to the children's home to facilitate both his court ordered monthly partial custody and further contact, which, in fact, already occurs (*id.* at 235, 216); and has encouraged the children to call him "Papa." (*Id.* at 216). If Appellee expresses a need for funds or household items, he supplies them (*id.* at 222), as well as clothing and toys for the children. (*Id.* at 223). Such constant and attentive solicitude seems widely at variance with the support court's characterization of Appellee Frampton's having "played a minimal role in raising and supporting" the children. (Trial Ct. Op., 11/21/06, at 2). We find that under such circumstances, the principle which serves to confirm Appellant's obligation operates in the same manner as to Appellee Frampton's.

¶ 22 To address the latter, the trial court finds relevant this Court's decision in *Ferguson v. McKiernan*, 855 A.2d 121 (Pa.Super.2004).[8] There the biological mother sought child support from the biological father, her co-worker and former lover, despite having assured him on several occasions that he would have no parental status or obligation. Although recognizing the mother's reprehensible conduct toward the biological father, as well as toward her husband, who filed for divorce on the same day artificial insemination was performed, the Court found a duty of support to be owed by the biological father on grounds that the parties could not bargain away the right of support which accrued not to them but to the children.

¶ 23 The trial court here, which seems erroneously to regard Appellant's desire to join Appellee Frampton as an attempt to escape financial liability altogether, found that appearances notwithstanding, *Ferguson* does not support Appellant's position, as she was already liable for support under the ruling in *L.S.K.* The court also attempted to distinguish *Ferguson* on several bases: specifically, the biological mother there was in the process of divorce and had once been romantically attached to the sperm donor, while the children here were born into an intact family to persons who intended to cooperate in rearing them.

¶ 24 The distinctions drawn by the trial court to support its theory of inapplicabili-

6. The notes of testimony referred to are of the York County custody trial. We take judicial notice of their existence and relevance in the support proceeding as the pleadings in that action have been incorporated as exhibits in the support proceedings, and are thus incorporated by reference. The trial court itself mentions the order which emanated from the custody trial. *See 220 Partnership v. Philadelphia Electric Co.*, 437 Pa.Super. 650, 650 A.2d 1094, 1097 (1994).

7. Appellee Frampton also requested shared legal custody with Appellee, and visitation as "regularly as possible." (N.T., 8/2/06, at 232).

8. We note that the sperm donor's petition for allowance of appeal in that case has been granted. *See Ferguson v. McKiernan*, 581 Pa. 629, 868 A.2d 378 (2005). Until the issues raised are resolved by our Supreme Court, the decision of the Superior Court remains controlling law. *See Randt v. Abex Corp.*, 448 Pa.Super. 224, 671 A.2d 228, 232 n. 2 (1996).

ty seem less persuasive than distinctions which tend in the opposite direction. Contrary to the trial court's assertion that Appellee Frampton, "like the sperm donor in *Ferguson* who **also** did not assert or seek parental rights," (Trial Ct. Op., 11/21/06, at 6) (emphasis added), rather than remaining detached from the children, he became, voluntarily, indeed, enthusiastically, an integral part of their lives. Most pertinently, the court found that Appellee Frampton made no agreement as to the children's support as there was no need for him to do so—two parents were already available to provide the support. This last point is in fact the crux of the court's rationale: "to hold [Appellee] Frampton liable for support would create a situation in which three parties/parents would be liable for support." (Trial Ct. Op. at 7). In the trial court's view the interjection of a third person in the traditional support scenario would create an untenable situation, never having been anticipated by Pennsylvania law. We are not convinced that the calculus of support arrangements cannot be reformulated, for instance, applying to the guidelines amount set for Appellant fractional shares to incorporate the contribution of anther obligee. As the Court in *L.S.K., supra,* has held, in another anomalous situation:

> We recognize this is a matter which is better addressed by the legislature rather than the courts. However, in the absence of legislative mandates, the courts must construct a fair, workable and responsible basis for the protection of children, aside from whatever rights the adults may have *vis a vis* each other.

*Id.* at 878.

¶ 25 Accordingly, we affirm the award of custody, vacate the award of support, and remand to the trial court with directions that Appellee Frampton be joined as an indispensable party for a hearing at which the support obligation of each litigant is to be recalculated.

¶ 26 Custody order affirmed. Support order vacated and case remanded with instructions. Jurisdiction is relinquished.