J-S26003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LORI WAGNER AND ROBERT BOYER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUNDIN VENABLE | : | |
| | : | |
| Appellant | : | No. 384 MDA 2024 |

Appeal from the Order Entered February 15, 2024
In the Court of Common Pleas of York County
Civil Division at No(s): 2019-FC-001924-03

BEFORE: PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, P.J.E.:      **FILED: SEPTEMBER 24, 2024**

Lundin Venable ("Mother") appeals from the order denying her petition for modification of custody and contempt of court against Lori Wagner ("Grandmother") and Robert Boyer ("Grandfather") (collectively, "Grandparents"). Mother raises numerous claims of trial court error. After careful review, we affirm.

The trial court set forth the relevant factual and procedural history:

> Mother and Grandparents have been involved in custody proceedings since 2019 when Grandparents filed a complaint for custody of Mother's child [("Child")], who is now seven years old, asserting that they had been caring for Child for the past eighteen months. Grandparents' complaint asserted concerns regarding Mother's substance abuse, alcohol abuse, mental health, suicide attempts, etc. At trial on June 24, 2020, the court granted Grandparents sole legal custody and primary physical custody of Child. The court granted Mother strictly supervised partial physical custody with increased time phased in via four different tiers with seven conditions. Because Mother admitted to posting a picture of

Child on social media posing with her butt naked when Child was three years old, the court found Mother to be a threat of harm.

Grandparents and Child live in York, Pennsylvania, and Mother now lives approximately two and one-half hours away in Wilkes-Barre, Pennsylvania. By way of an abbreviated procedural history, on July 25, 2022, Mother filed a petition for modification and contempt, seeking a contempt finding for Grandmother and for supervision to ultimately be dropped. A custody trial was scheduled for June 22, 2023. Because two experts would not be available on the first day of trial, the court scheduled an hour for one expert to give testimony on June 8, 2023, and for the other to give testimony on June 9, 2023. The trial on June 22, 2023 was continued [to] October 26, 2023 and [] February 8, 2024, when the court entered its final order. The court denied Mother's petition with regard to contempt and removing the strict supervision requirement. The court did remove the phased-in system of supervision. Mother filed her notice of appeal and concise statement [of] errors on March 11, 2024.

Trial Court Opinion, 4/12/24, at 1-2 (record citations omitted).

Mother raises eight claims of error:

1. Did the trial court err as a matter of law and abuse its discretion by failing to complete testimony within a reasonable period of time, contrary to the best interests of the Child[?]

2. Did the trial court err as a matter of law and abuse its discretion by not addressing or ruling on matters of contempt raised by Mother in her Petition for Modification and Contempt filed on July 25, 2022?

3. Did the trial court err as a matter of law and abuse its discretion, attributing Mother's physical appearance and presence on [s]ocial [m]edia as factual reasons to continue supervised contact with the Child and deny her petition for [m]odification[?]

4. Did the trial court err as a matter of law and / or abuse its discretion when removing Mother's ability to progress with her physical custody rights[?]

5. Did the trial court err as a matter of law and/or abuse its discretion when, without sufficient reason and despite expert

testimony, it found that [M]other continues to pose a risk of harm to the minor [C]hild[?]

6. Did the trial court err as a matter of law and / or abuse its discretion when, despite having achieved sustained sobriety, engaging in recovery groups, and continued engagement in mental health treatment, it sustained its finding that Mother is a risk of harm to the [C]hild[?]

7. Did the trial court err as a matter of law and/or abuse its discretion in continuing to allow Grandmother to deny Mother's numerous requests that the [c]ourt appoint a supervisor despite a lack of evidence supporting ongoing safety concerns[?]

8. In addition to the above, the trial court erred as a matter of law and / or abused its discretion when it counted missed visits against her that she had no control over due to the continuing position of the court that she remains a risk of harm and continuing to require that Mother be subject to strict supervision at all times.

Appellant's Brief, at 4-6.

Our standard and scope of review of a custody order or modification is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is [an] abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our rule does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*D.R.L. v. K.L.C.*, 216 A.3d 276, 279 (Pa. Super. 2019) (citation omitted). As is true of all custody matters, "the paramount concern is the best interests of the child." *S.S. v. T.J.*, 212 A.3d 1026, 1035 (Pa. Super. 2019) (citation

omitted). The same standard applies to modification of custody orders; a court may only modify a custody order "to serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). To assist the courts in determining the best interest of a child, the Child Custody Act provides sixteen factors for a court to consider:

> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:
>
> (1) Which party is more likely to ensure the safety of the child.
>
> (2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (2.2) Violent or assaultive behavior committed by a party.
>
> (2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs for the child.

(11) The proximity of the residences of both parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arraignments.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) (citation omitted).

Mother first argues the trial court erred because it did not complete the testimony in a reasonable period of time and asserts the trial court violated Rule 1915.4. *See* Appellant's Brief, at 24-26. Grandparents respond that Mother waived this claim by failing to "object or seek earlier court dates during the adjudication of Mother's Petition for Modification and Contempt." Appellee's Brief, at 33. We agree.

"It is axiomatic that claims that were not raised in the trial court may not be raised for the first time on appeal." *In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010) (citations omitted); *see McMillan v. Children and Youth Services Delaware County*, 1791 EDA 2021, at *5 (Pa. Super. filed April 27, 2022) (unpublished memorandum) ("failure to object to the timing and/or scheduling of a custody trial under Rule 1915.4 constitutes waiver on appeal") (citation omitted).[1] Our review of the record does not show any objection to the scheduling of the hearings by Mother, nor does she point us to any place in the record where we can find her preservation of this issue. As such, this claim is waived.

Moreover, Mother does not request any specific relief on this claim nor provide us with any legal argument to support it. Mother simply notes that two of the trial dates were only an hour long, as the trial court scheduled them to accommodate the expert witnesses of each party, and one trial date ended

---

[1] We may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value. *See* Pa.R.A.P. 126(b).

early because the trial judge had a personal appointment. ***See*** Appellant's Brief, at 25-26. Notably, the language of the subsections of Rule 1915.4 to which Mother cites does not provide a remedy if the trial court does not comply with the time limits. ***See*** Pa.R.C.P. 1915.4(b), (c); ***Dear v. Dear***, 3023 EDA 2023, 2024 WL 3791650, at *6 (Pa. Super. filed August 13, 2024) (unpublished memorandum) (noting that subsections 1915.4(c) and (d) do not provide a remedy or sanction for failure to comply) (citing ***Heffley v. Heffley***, 977 WDA 2023, 2024 WL 1855126, at *8 (Pa. Super. filed April 29, 2024) (unpublished memorandum)). Therefore, even if we did not find this claim waived, Mother would not be entitled to any relief.

Next, Mother combines issues 2 and 7 together in one argument section.[2] Mother asserts the trial court "circumvent[ed] Mother's claims of contempt through the appointment of a Parent Coordinator[.]" Appellant's Brief, at 43-44. Mother argues the trial court erred in appointing a parent coordinator to assist with the selection of supervisors. ***See*** Appellant's Brief, at 41-44. We address Mother's claim of contempt first.

_____

[2] Although Mother's brief notes she is combining issue 2 and 8, the language of issue 8 on page 41 of Mother's brief tracks the language of issue 7 in her statement of questions. ***Cf.*** Appellant's Brief, at 5-6, 41. Further, we remind Mother's counsel that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a). If counsel seeks to combine questions to be argued in the argument section, they should be combined in the statement of questions involved.

We review the denial of a contempt petition for a "clear abuse of discretion." **Rogowski v. Kirven**, 291 A.3d 50, 57 (Pa. Super. 2023) (citation omitted).

> To be in contempt, a party must have violated a court order, and the complaining party must satisfy [its] burden [of proving contempt] by a preponderance of the evidence. Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he, or she, is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

**Id.** (citation and brackets omitted). "[A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." **In re Contempt of Cullen**, 849 A.2d 1207, 1210 (Pa. Super. 2004) (citation omitted). Further, the order in which the contemnor is alleged to have violated must be "definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." **Id.** (citation and emphasis omitted).

Mother does not point to what order she alleges Grandmother violated.[3] Mother simply argues that "the [fact the] trial court felt it necessary to prompt Grandmother on several occasions to be gracious to Mother's requests for supervisors supports Mother's claim [of contempt.]" Appellant's Brief, at 44

---

[3] Mother's petition for contempt notes that Grandmother violated the June 24, 2020, order. **See** Petition for Modification and Contempt, 7/25/22, at 3. We believe Mother's petition is referencing the final custody order filed on June 26, 2020.

(emphasis omitted). Our review of the record provides two possible orders prior to Mother's petition for contempt that refers to supervisors. First, the order filed on September 3, 2021, provides "the [c]ourt does urge the [G]randparents to either supervise on their own or to come up with some supervisors of their own." Order, 9/3/21, at 2. Second, the final custody order of June 26, 2020, references supervised visits. However, the final custody order specifically references the supervisors as Grandparents, Ms. Gaffe, or Ms. Mary Margaret Smith. **See** Order, 6/26/20, at 3, 4, 5, 7.

We have not located any order that definitely, clearly, and specifically orders Grandmother to accept Mother's supervisors. **See In re Contempt of Cullen**, 849 A.2d at 1210. Therefore, the trial court did not err in denying Mother's petition for contempt.[4]

Mother further argues that the trial court erred in "delegat[ing] its responsibility as fact-finder and decision-maker over matters central to the custody case which Mother raised by petition to the Parent Coordinator[.]" Appellant's Brief, at 42. Specifically, Mother asserts that the issue of visitation and the need for supervisors for Mother's visitation, were the central issues

---

[4] Mother briefly references a claim that Grandmother violated an order prohibiting disparaging remarks by either party in front of the Child. **See** Appellant's Brief, at 43. As Mother includes only one sentence to support this claim, does not reference the order in question, and does not point to the record to show what disparaging remarks Grandmother made, we find this claim waived. **See In re Adoption of J.M.B.**, 308 A.3d 1262, 1276 (Pa. Super. 2024) (finding issue waived for failure to develop the argument).

which were delegated to the parent coordinator. **See id.** However, Mother did not object when the trial court appointed a parent coordinator to assist with finding supervisors. **See** N.T. Status Conference, 1/5/23, at 11 (Mother's counsel agrees that a parent coordinator can assist with supervisors). We find this claim waived for failure to raise it with the trial court. **See** Pa.R.A.P. 302(a).

Mother addresses her remaining claims in one argument section.[5] We therefore address her remaining claims together. Mother first argues the trial court erred in finding she is a risk of harm to Child because of a photograph Mother posted on social media that depicted Child's naked buttocks. **See** Appellant's Brief, at 28. However, as conceded by Mother, this finding was made by the trial court in its June 26, 2020, custody order. That order was not appealed and is therefore not before us. **See** Appellant's Brief, at 27-28; Pa.R.A.P. 903(a) (appeals must be filed within 30 days after the entry of the order). To the extent that Mother is arguing that the trial court should not continue to consider this factual finding, we note that "[i]t is clear that when making a decision as to the current best interests of the child[], the trial judge can consider the history of the parties." **Jones v. Jones**, 884 A.2d 915, 916 (Pa. Super. 2005) (citation omitted).

_____

[5] Mother addresses claims 3, 4, 5, 6, and 8 together in one argument section. Although Mother's brief notes she is arguing issue 7 within this section, the language of issue 7 on page 27 of Mother's brief tracks the language of issue 8 in her statement of questions. **Cf.** Appellant's Brief, at 5-6, 27.

The crux of Mother's remaining claims is a dispute over the trial court's findings of fact, including its determinations of credibility and weight of the evidence. *See* Appellant's Brief, at 28, 29, 31, 32, 34 (trial court drew a "conclusion not supported by the record[;]" trial court "relied on [its] own interpretation of evidence[;]" Mother asserts her decisions show she is not irrational, impulsive, or instable; the trial court "abnormally fixated on Mother's stability[;]" the trial court allegedly "discount[ed] Mother's [t]hreat of [h]arm [e]valuation[.]"). Mother is essentially asking this Court to re-weigh the evidence and re-assess credibility of the witnesses. We cannot do that. We reiterate that:

> We must accept findings of the trial court that are supported by competent evidence of record, as our rule does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

*D.R.L.*, 216 A.3d at 279 (citation omitted). We therefore will review the trial court's findings to determine if they are supported by competent evidence within the record.

Mother's first complaint is the trial court's treatment of her social media presence. *See* Appellant's Brief, at 27-33. The trial court addressed this claim as follows:

> Mother mischaracterized the court's ruling. The court did not rule that Mother's appearance or social media were "the" reason to maintain supervised visitation. In assessing custody factor number four regarding a child's need for stability and continuity in the child's education, family life, and community life, the court

- 11 -

indicated that Mother's judgment regarding inappropriate things on the internet, or her TikTok video showing the surgical bifurcation Mother had performed on her tongue to cause it to appear more like a snake's tongue, while not a big deal in and of itself, raises continuing concerns regarding Mother's stability. The court notes that in the history of this case, Mother's social media posts have been a problem. For example, Mother posted a picture of Child when Child was three years old showing Child posing with her butt naked on social media. The court found this to be child pornography and ordered Mother not have pornography or adult content around Child. As another example, Mother made another questionable posting on Facebook of a picture of Mother attempting to give Child a kiss, but Child's mouth is open. Mother set this picture as her profile picture on Facebook. The court notes that Mother closed her OnlyFans social media account a few years ago and reports that she closed or stopped using the Facebook account used to promote the OnlyFans account.

The court made clear that Mother's mental stability, judgment, and relational instability remains a concern. …

Trial Court Opinion, 4/12/24, at 8-9 (record citations omitted). The trial court continued in its opinion by referencing other examples of Mother's instability. **See id.** at 9-12. Mother asserts the trial court's conclusions that her social media presence shows inconsistency and lack of stability is not supported by the record. **See** Appellant's Brief, at 28. We disagree.

As the trial court noted, Mother continues to post on social media inappropriate pictures and videos. The trial court viewed multiple TikTok videos posted both before and after Mother filed the petition for modification. **See** N.T. Trial, 10/26/23, at 115-22.[6] Grandmother testified she believes these videos show Mother's mental health difficulties. **See id.** Mother never

_____

[6] These videos are not included in the certified record provided to this Court.

- 12 -

denied posting the pictures and videos, and simply stated that they were posted years ago, and she agreed with her counsel that she is "now more cognizant of what [she] post[s] on social media and how it could impact [her] child[.]" *See id.* at 170-71. The trial court's factual decision is based upon competent evidence of record, and we are bound by those findings. *See D.R.L.*, 216 A.3d at 279. This issue does not merit relief.

Next, Mother argues the trial court "abnormally fixated on Mother's stability[.]" Appellant's Brief, at 32. However, we emphasize "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M.*, 63 A.3d at 339 (citation omitted). We decline to reweigh the evidence as that is solely within the discretion of the trial court.

Mother attempts to argue, for the first time to this Court, that the trial court was biased against her because of its "own personal religious views" and cites to a newspaper article from 2015. Appellant's Brief, at 36. "It is well-settled that [this Court] may only consider documents properly incorporated within the certified record." *Hrinkevich v. Hrinkevich*, 676 A.2d 237, 240 (Pa. Super. 1996) (citation omitted). The newspaper article is not included within the certified record, and we will not consider it. Furthermore, Mother never requested recusal nor objected to the trial court's alleged bias below. As such, this issue is waived. *See* Pa.R.A.P. 302(a).

Finally, Mother disputes she is a risk of harm to Child. **See** Appellant's Brief, at 37-40. Mother again is painting the picture in the light she wishes the trial court had viewed the evidence. We are not to reweigh the evidence nor create our own credibility judgments. **See D.R.L.**, 216 A.3d at 279. The trial court thoughtfully considered all custody factors and our review of the record finds support for the trial court's factual findings. **See** N.T. Trial, 2/8/24, at 188-95.

As Mother's claims are either waived or without merit, we affirm the order of the trial court.[7]

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/24/2024

---

[7] Grandparents ask this Court to dismiss Mother's appeal for her repeated violations of the Rules of Appellate Procedure. We previously denied a similar request on May 31, 2024. Grandparents renew this request and include additional violations of the Rules. As we do not believe Mother's violations have hampered our review, we decline to dismiss the appeal on this basis.